The **EBENEZER SOCIETY, et al.,**
**Plaintiffs/Judgment Creditors,**
**Appellants,**

v.

**DRYVIT SYSTEMS, INC., judgment debtor, Respondent, Hartford Fire Insurance Company, et al., garnishees, Aetna Fire Underwriters Insurance Company, et al., garnishees, Travelers Insurance Company, garnishee, Respondents,**

Continental Casualty
Company, Garnishee,

**TransAmerica Insurance Company,**
**garnishee, Respondent.**

No. CX–89–1992.

Court of Appeals of Minnesota.

April 3, 1990.

Curtis D. Forslund, Lynn B. Noland, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for Ebenezer Society, et al.

Kyle E. Hart, Fabyanske, Svoboda, Westra & Davis, St. Paul, for Dryvit Systems, Inc.

Larry A. Hanson, James A. Bobzien, Moore, Costello & Hart, St. Paul, for Hartford Fire Ins. Co. et al. garnishees.

Charles E. Gillin, Thomas M. Countryman, Jardine, Logan & O'Brien, St. Paul, for Aetna Fire Underwriters Ins. Co. et al. garnishees.

John R. Shoemaker, Robert T. White, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, for Travelers Ins. Co., garnishee.

Bradley M. Jones, Thomas H. Crouch, Meagher & Geer, Minneapolis, for Continental Cas. Co.

Janette K. Brimmer, Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, for TransAmerica Ins. Co., garnishee.

Considered and decided by RANDALL, P.J., and FOLEY and GARDEBRING, JJ.

## OPINION

FOLEY, Judge.

Appellants The Ebenezer Society and Ebenezer Park Apartments (Ebenezer) commenced an action against respondent Dryvit Systems, Inc., alleging Dryvit's negligence had resulted in damage to Ebenezer's property. Ebenezer and Dryvit entered into a purported *Miller–Shugart* agreement (*Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982)), whereby Dryvit agreed to entry of a $1,000,000 judgment against it, and Ebenezer agreed that the judgment would be collected only from Dryvit's insurers, not Dryvit.

Following entry of judgment, Ebenezer commenced garnishment actions against respondents Hartford Fire Insurance Company, Hartford Accident and Indemnity Company, Aetna Fire Underwriters Insurance Company, Aetna Insurance Company, Travelers Insurance Company, Continental Casualty Company, and TransAmerica Insurance Company (the insurers). Continental has since been dismissed as a party to this action. The insurers denied liability and Ebenezer served supplemental complaints against the insurers. Ebenezer's subsequent motion for leave to file a supplemental complaint against the insurers was denied, and the insurers were discharged as garnishees. Ebenezer moved for reconsideration of the order denying leave to file the amended complaint and discharging the insurers. This motion was denied.

Ebenezer appeals the denial of the motion for leave to file a supplemental complaint and seeks review of the trial court's order denying reconsideration. We affirm.

## FACTS

The Ebenezer Society is a non-profit organization affiliated with the American Lutheran Church. Ebenezer Park Apartments is a non-profit charitable corporation created by the Society in 1977 to own and operate a subsidized housing project for the elderly and handicapped. Ebenezer obtained financing for construction of the Ebenezer Park Apartments in Minneapolis

in 1978. The building was completed in May 1980.

The general contractor on the project was M.A. Mortenson Co. In connection with the project, Mortenson obtained a performance-payment bond in the amount of $3,200,000.

Dryvit furnished the external insulation and wall finish system. There have been problems with water leaking into the building since the building was first occupied in May 1980. One of the possible sources of the problem has been identified as the Dryvit system. The insurers provided comprehensive general liability insurance to Dryvit at various times.

Ebenezer sued Dryvit, among others, in 1986 for claims arising out of the leakage at the Ebenezer Park Apartments. For the next two and a half years, Dryvit's privately-retained counsel participated actively in the litigation with Ebenezer.

On September 8, 1988, Dryvit tendered the defense of the action to Hartford Fire, Hartford Accident and TransAmerica. On September 15, 1988, Dryvit tendered defense of the action to Aetna Fire, Aetna Insurance, Travelers and Continental. The letters tendering defense of the matter indicated that the matter was set for trial in six or seven weeks. The letters tendering the defense to the insurers also stated:

> If your position is that there is no coverage or, no coverage for the majority of the damages being alleged in the lawsuit, then Dryvit will consider entering into a *Miller–Shugart* agreement with the plaintiffs in which Dryvit would admit liability in the amount of $500,000, but condition the admission on plaintiffs collecting the judgment from you, rather than Dryvit.

On October 10, 1988, Dryvit's counsel notified Aetna that Dryvit would enter into a *Miller–Shugart* settlement the next morning. The decision to enter the agreement was based on a telephone conversation in which an Aetna representative indicated that if Aetna accepted a tender of defense from Dryvit, it would "definitely"

be subject to a reservation of rights. The parties entered into a purported *Miller–Shugart* agreement, which was signed by the parties on October 25, 26, and 27, 1988.[1] Dryvit agreed to entry of a $1,000,000 judgment against it, with the proviso that Ebenezer would seek payment only from the insurers.

After judgment was entered pursuant to the *Miller–Shugart* agreement, Ebenezer served garnishment summonses on the insurers. The insurers responded, denying they had any obligation to Ebenezer. Ebenezer, without first obtaining leave of court to do so, served a supplemental garnishment summons and complaint on the insurers. Aetna and Travelers answered the supplemental complaint, alleging that Ebenezer had failed to comply with the terms of the garnishment statute, specifically Minn.Stat. §§ 571.50–.51 (1988). Hartford moved for discharge as a garnishee.

Ebenezer then moved for leave of court to file a supplemental garnishment summons and complaint. In an order filed October 4, 1989, Ebenezer's motion was denied. The trial court concluded that Ebenezer failed to comply with the requirements of the garnishment statute by filing a supplemental complaint without leave of court. The trial court also determined that Ebenezer failed to establish probable cause to believe that the insurers were liable.

Ebenezer moved for reconsideration of the October 4 order. The trial court denied the motion for reconsideration in an order dated November 3, 1989.

This appeal was filed November 6, 1989. On November 8, 1989, Ebenezer filed a petition for discretionary review of the November 3 order denying Ebenezer's motion to reconsider the earlier order. This court denied the petition for discretionary review and specified that, pursuant to Minn.R.Civ. App.P. 103.04, the panel hearing this appeal on the merits could, if it chose to do so, review the November 3 order.

---

1. Whether the agreement actually constituted a *Miller–Shugart* agreement is an issue we do not

decide. *See Buysse v. Baumann–Furrie & Co.,* 448 N.W.2d 865 (Minn.1989).

## ISSUES

1. Should this court review the November 3 order denying reconsideration?

2. Did the trial court err in determining that Ebenezer failed to show probable cause that the insurers were liable?

## ANALYSIS

1. An order denying a motion for leave to file a supplemental complaint in garnishment proceedings is appealable. *See Johnson Motor Co. v. Cue*, 352 N.W.2d 114, 116 (Minn.Ct.App.1984). The first order denying Ebenezer's motion for leave to file a supplemental complaint was appealable. However, rather than then appeal to this court from that order, Ebenezer moved only for reconsideration. An order denying reconsideration is not appealable. *See* Minn.R.Civ.App.P. 103.03, Comment (1983) (only orders enumerated in Minn.R.Civ. App.P. 103.03 are appealable). Minn.R.Civ. App.P. 103.04 provides:

> On appeal from or review of an order the appellate courts may review any order affecting the order from which the appeal is taken. * * * They may review any other matter as the interest of justice may require.

Thereafter, an appeal was taken from the original order of September 29, 1989 and filed October 4, 1989, denying leave to file a supplemental complaint. The subsequent order denying reconsideration did not affect the original order, and the interests of justice do not require that this court review the order denying reconsideration. We conclude that Ebenezer failed to establish probable cause because the insurance policies in question provided no coverage. Accordingly, there is no compelling reason or need to review the order denying reconsideration.

2. Ebenezer's action against Dryvit was based on allegations that Dryvit negligently provided defective workmanship and materials. This is a breach-of-contract claim. Although Ebenezer alleged negligence, the entire thrust of Ebenezer's claim against Dryvit was breach of contract.

In its complaint against Dryvit, Ebenezer alleged

> 18. Defendant Dryvit System, Inc. has furnished materials that did not comply with the implied warranties of merchantability and fitness for particular purpose; it has also breached its written warranty under which said materials were furnished and warranted to last 20 years. Said defendant also failed to use reasonable care in the training of Dryvit applicators.

> \* \* \* \* \* \*

> 20. As a direct consequence of the foregoing, plaintiff has suffered damages by reason of significant loss in the value of the building, costs of repair, potential loss of use of some areas of the building, damage to other property of the plaintiff that was to have been protected by the Dryvit system, including damage both to the exterior and interior portions of the building as well as potential damage to its structural members, all in an amount exceeding $50,000.

Ebenezer's second amended complaint added as an item of damages "exposure to property damage claims by tenants." In answers to interrogatories, Ebenezer stated it was also seeking damages for lost rent, the cost of temporary living provisions for tenants, furniture moving and removal, and reinstallation of shades and draperies.

To the extent Ebenezer seeks damages for building and structural damage, there is clearly no coverage under the comprehensive general liability policies. *Bor-Son Building Corp. v. Employers Commercial Union Insurance Co. of America,* 323 N.W.2d 58, 62 (Minn.1982). A comprehensive general liability policy is intended to protect third parties who suffer damage to person or property. *Id.* at 61–62. It is not intended to guarantee the insured's workmanship. *Knutson Construction Co. v. St. Paul Fire & Marine Insurance Co.,* 396 N.W.2d 229, 234 (Minn.1986).

Although Ebenezer's claims in addition to the building and structural damages claims may have been covered under the comprehensive general liability policies,

there was no allocation in the settlement for covered and non-covered items of damage. Accordingly, the trial court was correct in finding Ebenezer failed to establish probable cause. *See Bor–Son*, 323 N.W.2d at 64.

A general contractor was responsible for the entire project and posted a performance bond. Ebenezer's action against Dryvit would be an action covered by the performance bond. The insurers in the present case provided comprehensive general liability insurance. The damages alleged by Ebenezer are not covered under comprehensive general liability policies.

At oral argument, counsel indicated that no action was taken on the performance bond. There is no explanation for the lack of action on the performance bond when the allegations clearly revolved around a claim that Dryvit breached its contract by supplying a defective product.

### DECISION

Ebenezer failed to establish probable cause to believe that there is insurance coverage for its claims against Dryvit based on breach of contract.

Affirmed.